Good morning. Council we're here in an expedited fashion and we're familiar with your cases and we've cited your briefs, the authorities cited in your briefs and at least portions of the record. So feel free to get straight to the heart of your argument in the limited time that we have this morning. We're going to begin with Safe Affordable Georgia v. Chairman of the State Ethics Commission, Mr. Miller. Mr. Chief Judge, and may it please the Court. The Free Speech Clause of the First Amendment is a liberty-protecting provision. As we all know, you know, it famously says, Congress shall make no law abridging the freedom of speech. And what that's relevant for, for this discussion, is the remedies that are available. We have here, you know, a statutory scheme that has been held unconstitutional multiple times in this context. We are bringing an applied challenge. And my major point here today is the best available, maybe only available remedy available to the Court to correct this, is to not apply a rule that the provisions that restrict my client from speaking to be not applied in this context. As you know, we're hearing two appeals this afternoon. Yes. One of them is going to become moot by Wednesday, won't it? Most likely. You know, there is a chance that both of these individuals prevail and then they go forward with the case, excuse me, with their race. But actually, that is sort of on a technical basis. I would argue that, you know, if my client proceeds, he's still injured going forward, you know, even if the Lieutenant Governor is not in the race, because of all the past damage of him not being able to spend the money that he should have been able to spend through this committee. And the fact that, you know, up till now, both of the other candidates, you know, have been spending, you know, tens of millions of dollars that my client should have been able to spend. And, you know, and so catching up is the way that that can occur. But if you... Can I ask you a question about remedy? Yes. In your complaint, did you seek a specific type of preliminary injunctive relief or you had a clause that said appropriate preliminary injunctive relief? We had both. So, the specific relief we requested, you know, is that Georgia Statutes 21-530A and 21-541 not be applied against my client. Those are the contribution limit provisions? Those are the contribution limit and the coordination provision. Correct. And fundraising. Okay. Right. Well, I guess my question, though, is that, let us say that Secretary Raffensperger loses.  A safe, affordable Georgia won't be participating, will it, in the gubernatorial runoff if there is one, will it? That's correct. And I would prefer the court avoid these mootness issues and problems that could arise, you know, by issuing an order today or tomorrow, you know, that resolves this. Opinions could follow later? Well, we would have to issue the mandate. We'd have... I mean, in the event that we issued an opinion, but the mandate hadn't issued and it became moot, we would have to then vacate our opinion and dismiss the appeal as moot, wouldn't we? That's right. The judgment and the mandate would need to issue. And you know, this is... This is forthwith. That's correct. Which means we're really not in much of a position to wait on our opinion, either, are we? Well, you know, I think that... If we don't have the case anymore... So orders of injunction should... We don't have the case anymore when we shouldn't be issuing an opinion about a case over which we no longer have jurisdiction. I mean... What I would say, Your Honor, is that the judgment that would be issued in the order would, as an injunction, you know, would explain everything that happens and what the decision is. I believe that there are contexts where opinions could follow later. It has happened in cases... Actually, the Pentagon Papers case was one where that happened with the Supreme Court. The real value here is that... Going forward. Yeah. I mean, both of these appeals have implications for an issue that has been recurring in the district court, and to the extent that we can, settling some questions going forward about the scheme in Georgia. That's correct. And that's why I did not want to give up on mootness, because there is this... It has certainly repeated and has evaded review from this court so far. I've got a question related to the merits of your argument, which is, isn't it pretty nontraditional to enjoin a constitutional provision in order to deal with what at least some district courts have found is an unconstitutional provision? So Your Honor, I would say just like the defendant's state in the other case, that standing alone, the leadership provision is not unconstitutional. The only thing that makes it unconstitutional is how it interacts with the ordinary campaign committee. Right, but those limits are even... I'm not sure that it would be enough if they weren't referenced, but those particular limits are referenced in this exact statute. So what this statute says is there are limits that apply to everyone else that these two officeholders are exempted from. Why isn't that itself unconstitutional? Your Honor, getting back to my original point, I believe the power of the court is to strike as applied things that are unconstitutional. If you get into the business of getting in and gerrymandering the result, you know, affecting the result to what we think the legislature would want or something like that, you know, that's involving the court in a political process. The question is, what is unconstitutional right now? What's unconstitutional now is the restriction of speech. The First Amendment applies to the restriction of speech. I think it would be orwellian, I hate to use the word, to say that what the court is going to do is it's going to stop someone from speaking more. That's a problem. And, you know, the defendants in the other case, in fact the state in the other case, say as much. In the other case, the state forthrightly says, in its conclusion, if you find this unconstitutional, don't strike the leadership committee statute. And you know, and the state in that case, both through the lieutenant governor who is sued in his official capacity and these very defendants, you know, explain there essentially that we're right. I mean, state officeholders traditionally have, you know, in my view when I was in that office, I think correctly thought that if there was essentially a plausible argument to support a state statute, the attorney general of the particular state shouldn't say to strike it down. But I don't think we need to defer to the state about whether one of its statutes is unconstitutional, right? What I'm suggesting is what the state has said is that in that brief, they've acknowledged that the relief that we requested is the preferred remedy. Well, let's put it this way. We would have, if you're right about the First Amendment issue, we will have to enjoin the operation of some state law. In your position, as I understand it, what you just said is the one that promotes more speech, not less speech, does not impose a prior restraint would be the relief you requested. Yeah, that's correct. And if you look at it practically, Your Honor, either way there's going to be an injunction against something that state law allows. That's correct. And the remedy that we propose is actually the only one that can make anyone whole. Because, you know, they have spent, you know, tens of millions of dollars or whatever already. That can't be undone. Allowing us to do something similar brings parity. Just stopping them once they've already spoken. I mean, no matter what, that would be moot after tomorrow anyway, right? I mean, what they've already spent at this point is big debt. That's maybe the practical reality of where this case stands at this very moment. But the court is making a decision for the long term with this law. I mean, if you, if you, let's, and I know this timetable hasn't worked in the past, so it's just a hypothetical, but if there had been a lawsuit filed the day after the LC statute went into effect, and you got into federal district court the next day, and the LC statute, and this court on an expedited stay motion affirmed within two weeks, three weeks, let's say, you would need the coordination and contribution limits to be knocked out for your client, right? You could get complete relief in that hypothetical simply through the injunction prohibiting enforcement of the LC statute. Your Honor, I'm getting back to my original point. The First Amendment is a liberty-preserving statute. The only remedy that's available for the court to afford is to allow more speech. If the state wants to then go in, you know, so... But the constitutional problem in this case, from your perspective, is the LC statute. No. Not at all. You're telling me that absent the LC statute, you would have a valid First Amendment challenge to the campaign and coordination statutes that Georgia has on the books? What I'm telling you is, is absent the statutes I'm challenging, I would not have a problem with the Leadership Committee statute. Yeah, but I'm flipping it the other way. And so... What we're both saying is, is that it's them operating in coordination that is the problem. And so if you have the statutory scheme that says this person can speak really, really loudly and these people can't, what the court does is it says, no, everyone can speak equally. And then if Georgia wants to come and pass... I don't think that's correct. And the reason is, the pre-existing statute, whatever anyone's views are of what campaign finance law should allow, plainly uniform contribution limits are constitutionally permitted, right? And the Georgia legislature and state met the requirements to show that those limitations were constitutional, correct? I don't know if there's been something in the case, but I'll stipulate that they are. I assume you're not arguing that those limits are themselves unconstitutional? Not today. Right. And... Well, today is the day we're dealing with. And those limits elsewhere that have been fully litigated have been justified by anti-corruption interests, correct? Yes. Right. So, I still think it's different when you have a pre-existing set of constitutional limits and then a new statute specifically excises two people from those limits. And Your Honor, my response to that is, I believe that's actually a policy consideration that you're making and that the court has to look at the statute, just the scheme as it exists. They've had this whole thing and this is what it is. The whole thing is coming before the court. And what was passed when doesn't really matter. The fact that they can have a system that's constitutional, fine, let them go and enact something that's constitutional. The Georgia legislature works better than Congress. They'll fix it for whatever reason. But if Georgia allowed campaign committees, candidate campaign committees, no contribution limits and no coordination limits, that would be constitutional, right? Absolutely. But there wouldn't be a constitutional problem with the leadership committee statute because it would be effectively the same thing. That's right. That's your point? Yes. If Georgia was one of the 12 states that didn't have limits, then they could do what they want.  They could do that. That's correct. And then they could have this leadership committee and they can offset official expenses when they want to take trips or whatever, like it says what they can do. It's only the interaction of the two. That's right. And I want to ask about Judge Jordan's question. It's not entirely clear to me, I don't know if you've thought about it, how you could enjoin the operation of the leadership committee statute. Yeah, so I don't think you can, you know, in the sense that... It allows the lieutenant governor to create this committee and to spend that money in support of his campaign for governor. That's correct. But it's not really requiring state officials to do anything. No, it's not. It's basically saying, hey, these other rules don't apply, just be part of what you're doing. It would only work if, and this may be the big question for the next appeal, is if you, if the leadership committee is a state actor and you could enjoin it. I know you don't want my opinion on that, but I don't think it is. All right. I have a question about your organization's interests. So you're suing as the committee, right? That's correct. But you've said that you're not asking to be called a leadership committee, right? You're just asking to have the same allowances for fundraising and... Only as applied to this race, that's right. Right. Why do you, as a committee, have an injury? It makes sense why the candidate that you're supporting has an injury, but I'm curious why you have an injury, because you're treated the same as other committees of the same type, right? Yes. So, Your Honor, well, the same type, but not the same type. So essentially what all the courts have found here is that the leadership committee is operating as a campaign committee. The lieutenant governor has a campaign committee and he has this leadership committee, which acts as a committee. So we created a committee that is as close to a leadership committee as we can have, a hybrid PAC, and say, hey, this limit should not apply to this. It should be treated like a leadership committee for this limited context. My question is, should you have, or did you, attempt to create a leadership committee and then get turned down? No, because it clearly says that we can't, and they're certainly arguing that we can't. They've acknowledged only the lieutenant governor and the governor can have one. And they've told other people that have tried to create them that they can't. They've told a lot of people a lot of things. Yeah. All right. So I'll sit down and reserve everything for rebuttal. All right. Thank you. Okay. Mr. Dove. Good afternoon, Chief Judge, and may it please the court. My name is David Dove, and with my co-counsel, we represent the state defendants in this matter. This case boils down to whether a singular political committee can utilize the First Amendment to create a bespoke exemption to Georgia's coordination and contribution requirements. That's because Georgia has created, by law, a bespoke committee that frees it from those limits, right? That's operating in the same election campaign. Well, and the state's position is that leadership committee's purpose and how they operate is broader than just supporting the campaign of the leadership committee's chair.  Sure. But if they were only using it for other purposes other than participating in this election campaign, we wouldn't be here, would we? That is the basis of this case, Your Honor. But to that point, Secretary Raffensperger is not a party to this litigation. And that's one thing in noting Judge Ross's order. There are some conflations we believe— Judge Ross was wrong for the basis for denying a preliminary injunction, wasn't she? We should get that out of the way. That was just the idea that because you're not giving relief to others not before the court, that's not a basis for denying an injunction, is it? Well, Your Honor, she didn't specifically use the word standing, but that's ultimately where her decision rests in the fact that essentially the remedy that SAGA is looking for here is at odds with their own arguments as it relates to the interaction and the interplay of the Leadership Committee statute. Well, Wayne, I don't understand that. So, as I understand it, their hybrid PAC is subject to contribution and coordination limits that the Leadership Committee is not. Well, they are subject to contribution and coordination limits, but they can also spend with no limit in this race to support the campaign for— But they can't accept unlimited contributions or coordinate with the Candidate Committee in the same way that the Leadership Committee can, right? Not in the same way that the Leadership Committee can. I mean, that's the disparity they're complaining about. I'm having a hard time understanding how that's a standing issue. Well, to the— I mean, Judge Ross said, look, you could have challenged. There could be others. There are others who have the same objection whose injury is not being remedied, and for that reason, I'm not going to grant an injunction. That's not a basis for doing so, is it, counsel? Well, the state— I mean, you might be entitled to an affirm, but not for the reasons stated by the district court, is what I'm saying. Well, in our view of how she ultimately landed on the denial of the injunction, it was related to the fact that she could not grant a remedy, that it was in terms of— Well, tell me this. Why wouldn't it be a remedy? For standing purposes, it just has to be redressable. Whether or not that's the right remedy on the merits is a separate question, but why wouldn't it be redressable by freeing the hybrid PAC here of the restrictions that differ from the leadership committees? Well, I think to the point that Judge Grant was getting at earlier, the contribution and coordination limits are constitutionally sound. Sure. No contribution limits would be constitutionally sound, too, but we wouldn't have a First Amendment problem. Well, kind of the wonkish nature with which these cases have progressed, we believe, lies in the framing of the cases. The contribution and coordination limits operate to restrict what candidates can ultimately receive to prohibit quid pro quo corruption and the appearance of that.  So you have, in this case, a committee— But the lieutenant governor can effectively take unlimited contributions and have unlimited coordination, and there's not a risk of corruption? Well, I'm happy to speak to the purpose behind the leadership committee statute, but— It seems to me that the state has kind of blown past them with what it allows the leadership committee to do. Well, the leadership committees, they're limited in number, and they're also designed to reduce the amount of dark money that's spent in politics. That's a cold comfort to whoever's running against the lieutenant governor for the governor's seat. Well, if the injury— Why wouldn't the same concern exist for other high-ranking executive government officials who are running for an office like governor of the state, like the secretary of state, like the attorney general, like X, Y, and Z? Well, looking at the purpose behind the leadership committee statute, it was to create a structure that effectively serves as a quasi-party committee. And so, in looking at that, the legislature chose to delineate 12 potential committees to legislative caucuses that represent the leadership of the various parties, as well as the governor and lieutenant governor as the two general officers of the executive branch of the Georgia state government. But I think what's salient here is that the cases that the court has seen come before it. Here you have a committee wanting parity with another type of committee, yet challenging statutes that are intended to directly affect candidates. In other cases, you have had candidates challenge the statute that distinguishes committee to committee in order to effectuate equality among those candidates. And I believe that's where this kind of disparity ends up creating complex issues as it relates to remedy. And I think that's ultimately where, at the heart of her order, that's where Judge Ross landed. I do wonder about complexity. I mean, as my colleagues have said, I think we're looking at this, there hasn't been a binding precedent on this, I think it's fair to say, well-criticized statute. But if this is the appropriate remedy, would that create confusion? Because it seems to me that you wouldn't be able to know, necessarily, if you were going to be an opponent of a lieutenant governor or a governor in the next election, right? Because perhaps that person has not declared their candidacy. So would there be some question about, I guess, could anyone who's going to run for an office seek a preemptive ability to not abide by the ordinary contribution limits in case they were going to face either the governor or the lieutenant governor in a race in the next election cycle? Your Honor, I don't believe that that type of question, preliminary relief prior to there actually being a controversy, would be appropriate. But to the extent that... But then the people can, the governor and lieutenant governor can raise money in these entities, regardless of whether they've declared for another race. Because at least, theoretically, their only purpose is not to support that candidate in a future race. So then you're looking at the governor and lieutenant governor racking up these high dollars, but no recourse for anyone else until that person is actually declared for an election. And you know that you'll be running against them, right? Well, but to that end, there are other purposes of the leadership committee besides supporting the campaign of its chair. And we've seen now, and Judge Cohen had a limited view... I'm not saying that. I mean, none of that, none of those other purposes are at issue here, are they? They're not... I mean, no one's challenging that, and they wouldn't create a First Amendment problem. Well, they're not an issue here, but I think it provides clarity and understanding where these contributions in Judge Grant's hypo would otherwise be... But it might well be that there's not standing to complain about it, that it's too speculative until we know who has qualified as candidates, right?  But I just don't understand why saying that the leadership committees can do other things has any bearing on this. I think it goes to Judge Grant's hypothetical of how money is also used out of these leadership committees when candidates are not in cycle. I think the point of my hypothetical is that even if a candidate, let's say, knew in his heart that he was going to run for re-election as governor, as long as he has not yet declared for that race, he could at least state that these funds are being raised for these other purposes. So my point was that someone who's clearly going to run for office could be getting money on this higher-level basis even before they were declared, which would create an injury if the only way to meet this is by a remedy of not having contribution limits applied to you either, then someone could be stuck. If another candidate has already declared for governor, but they don't know that Governor such and such is going to run again, then they wouldn't be able to go ahead and say raise during the session or raise without the limits. Doesn't that reveal some kind of infirmity with this as a remedy? Well, even to the extent that it does, the remedy that the appellant is asking for here is unworkable from a variety of perspectives. If independent committees as they exist now are entities that any individual can go register with the State Ethics Commission, one of the breaks on the leadership committee statute is the limited number of committees that can exist. Because they were designed to really bring dark money to light and provide... Why does that make this unworkable? There's still going to be disclosure requirements, right? It's the number of potential committees, Your Honor, to the extent that any individual could go out and create... It would only be for... One hybrid PAC is sued. An injunction is granted because it wants to support a particular candidate's campaign that is the opponent of the campaign the leadership committee is supporting. I'm not saying what makes it unworkable to say we want the same limits on coordination and contributions that the leadership committee has for purposes of this race and these candidates. What's unworkable about that? The danger there is the erosion of the contribution and coordination limits. Well, what's unworkable about it? I mean, it's a simple injunction, isn't it? It would forbid the Ethics Commission and the Attorney General from enforcing the contribution and coordination limits against the hybrid PAC, insofar as they differ from what the leadership committee faces. I think under that scenario, it's foreseeable that you could potentially have candidates that qualify for an elective office that would have similar interests as maybe Saga does here if the court were... Well, they could go to court maybe and establish that and seek a limited injunction, too. I'm having a hard time understanding what makes their requested injunction unworkable. It seems to me it may be easily workable. Well, at bottom, if that becomes the baseline, you could have candidates that qualify just for the purpose of receiving access to a quasi-leadership committee. And leadership committees can contribute to any campaign. They're not limited to the campaign of their chair. And so from that perspective, you could have a large proliferation of these types of groups. The reason that leadership committees are limited is so that the public and the state can police those entities in a way to ensure not only transparency, but also to ensure... Transparency. I mean, all you have to do is have disclosure requirements that are filed with the Secretary of State so many days before the election, right? And have that for everybody. You just don't want to keep track of too many people in the race. Is that it? I don't know that the government has much of a very meritorious transparency concern. If their concern is too many people are going to participate in our election campaign. There's limited resources that the state has in order to police that quid pro quo corruption. I've got some questions about enforcement. Because I do think that that's a very tricky part about the way that this statute is designed. So what, if anything, does either the Attorney General or the Ethics Commission do proactively always to kind of enforce the ELSI statute? So the kind of enforcement question is really it's related to complaints that would come in related to the conduct of the Leadership Committee. There's not currently... Well, as an initial matter, the Ethics Commission would receive the paperwork to file for a Leadership Committee or to file for an Independent Committee. And then to the extent that there was a violation of the terms of either of those committees, they would then conduct an investigation and have a hearing on that. So it could be from an Independent Committee standpoint. It could be enforcement of the contribution and coordination limits with a campaign. From the Leadership Committee standpoint, it could be expenditures outside the scope of Subsection D, which limit what Leadership Committees can do under the law. But the Attorney General is allowed to prosecute violations of the ELSI statute, right? That's correct. With or without... I mean, you may or may not know the answer to this question, but with or without complaints having been filed before the Ethics Commission? My understanding, Your Honor, is that the process is for a complaint to arise at the Ethics Commission for that to then be investigated by that agency. That agency then conducts a hearing that's effectively a probable cause type hearing and makes a decision of whether to refer that case to the Attorney General. Do you think that it... Do you think that... Would you characterize it as enforcing that statute to find that there's no violation? I know that's kind of... There are a lot of inverses in this case that are confusing. But do you think that it's... If there's a... If a complaint is filed and the Ethics Commission investigates it, do you think that it is enforcing that statute to approve of a particular ELSI, to say that that ELSI is lawful? They... No, Your Honor. To the extent that there is an investigation, I don't... My understanding would be that the Ethics Commission would not get to a place where they would kind of endorse the conduct of a leadership committee. So there's... Once the committee is established, there's relatively little action that can occur around that. Georgia has a prohibition on the investigation and disposition of complaints within 60 days of an election. So there's these windows that are kind of fluctuating throughout the year where the State Ethics Commission cannot investigate or take any action related to complaints that may lie against candidates, campaigns, leadership committees, independent committees, etc. How do those deadlines work? When does the commission get to operate? So it would be following the 60-day window that is... That sits before an election. So in this... And that's before the primary and the runoff and the general? That's correct. And then if there's a runoff from the general, that too? That's correct. So it's... When can a complaint be filed within or outside the window? It has to be filed outside the window. Okay. Otherwise, it's subject to rejection and that's present in other cases. Are you familiar with any cases that reject a state's ability to approve something? A lot of the cases that we have tell a state that they need to stop something, right? But there are fewer, to say the least, that tell a state you need to stop ignoring this thing. Right? And I think that point kind of highlights the fact that the remedy that SAGA is looking for is essentially that of a mandatory injunction to the extent that... No. I mean, it's a... You can't enforce the contribution and coordination limits against them, against their PAC, because there's a disparity created with the leadership committee. That's classic negative injunction. In that context, Your Honor, that would... That's like classic X Party young stuff. That would effectively... You can't enforce those limits against us. That would effectively be blue-penciling the state law to create... That's what we do with remedies for constitutional injuries all the time. I mean, what's the alternative? Maybe you're agnostic about this, but if you're not, I'd like to know. Well, I... Who would they... Let's say we all think there's a First Amendment problem here. Okay? Notwithstanding your argument, we think that the disparity that exists, in fact, creates a First Amendment violation. Who would be the right person to sue, and what would be the right remedy? And I do... Do you have a position about that? I do, and if Your Honor would allow me...  I see I'm out of time. No, please tell me. So going back to the framing of these complaints, you have, in this case... This is not a hard question. Who would you sue, and what would be the injunction? We believe that Saga should have... It would be inappropriate to have challenged the... It is inappropriate to challenge the contribution and coordination limits, because they're seeking... Who would you sue, and what injunction would you ask for? From the state's perspective, Your Honor, it's not our position to make the case for the appellants here. Okay, so you are agnostic. You don't have a position about, if there is a First Amendment violation, who the proper defendant and what the proper injunction would be. But highlighting that, to the extent that Saga is concerned about disparate treatment committee to committee, there is a Leadership Committee statute. Now, I let you have extra time because I wanted to hear who you thought the right defendant and what the right injunction would be, but you don't really have one, right? No, Your Honor. Maybe the answer is that sometimes Ex Parte Young doesn't give you a person to sue for appropriate injunction for legal. Does the state have a position on whether... Again, assume, I'm not asking you to concede. No matter what, we'll not say the state conceded X. But assume that we think that there is a First Amendment problem. Does the state... Would the state say that the First Amendment problem is with the general contribution statute or with the LC statute? It depends on who the plaintiff is. If it's a candidate, then the thing that operates against candidates, and we've highlighted this in the Jackson case, is the contribution and coordination limits. If the plaintiff is a committee, then the thing that operates to distinguish that committee from a leadership committee is the leadership committee statute. Well, all right. So, if that's true, what would the... Who would the hybrid pact sue and what would the remedy be? I just want to tease out your theory there. Sure. And, I mean, from the state's perspective... I mean, it sounds to me like that's an artificial distinction. If you agree that a candidate committee, if there is a First Amendment violation, would be attacking the contribution and coordination limits that apply to it, that would seem to be true for a hybrid pact that supports that candidate. I don't know what the distinction would be in terms of who you sue and what your remedy is. It's not an artificial distinction in that even if a hybrid pact were to have the contribution and coordination limits lifted, they still are not operating as a leadership committee. It's not a one-for-one change. Okay. I think we've... I actually have one more question. In some well-known Texas state law litigation, Texas formally asserted that there was no way to challenge its statute in federal court. Georgia hasn't made any such assertion. Am I correct? That is correct. Thank you. Okay. Mr. Miller? Thank you, Your Honor. As I alluded to earlier, the state actually answered this question previously in the other case. Document number 53 is the amicus brief they filed there. Let me read from it. First, the leadership committee statute does not operate as a burden on speech, incidental or otherwise. It does not establish contribution limits. Therefore, the leadership statute does not and cannot violate the First Amendment. That's the answer. That's the answer they gave there. It's the correct answer here. What statute did you allege was unconstitutional? I allege that the coordination contribution limits were unconstitutional along with the ability to solicit it in the name for a specific reason. Independent of the LC statute? Not independent. In operation together. Right. I understand that, and I understand that nuance, but you can't just say that there's no constitutional problem with the LC statute if you think that its operation in tandem with the other two created this world where your client is disadvantaged with regard to speech. Yeah, I agree with that. I said I have no problem with it independently. And if there were no contribution and coordination limits, you can't confer private rights. Then you wouldn't have a case, right? Correct, yeah. And then kind of a couple other things. Because there's not a problem with the leadership committee statute itself. Correct. And then Judge Grant, as you probably know from being from Georgia and involved with these things in the past, they had mentioned that party committees, that this operates as a quasi-party committee. Party committees in Georgia are limited to the small limits that everybody else is limited to. If Georgia wanted to do something to help the party, it would increase the party limits. It wouldn't allow the governor and lieutenant governor to have these committees and nobody else. And besides, when they're both of the same party as they are now, it only helps one party. I mean, I guess that takes me back to my original question, which is the kind of justification for the LC statute. I'd say it's fair to characterize as tepid. Yes, Your Honor. And also, like if you think about what they're saying is like how we preserve and protect against corruption is by only giving two people the ability to have these committees. Well, if you only have those two people, that's more corrupting, I would say, particularly when One of whom is arguably the most powerful official in government. That's correct. And they've got four years, the only people who can raise the money. And you'll have people out there that they donate to races not because they support some particular candidate because they believe what they say. They're just like, I want to support the horse that's going to win so I can get what I want. And you know where all that money is going to go? It's going to go to the person that doesn't have any fundraising limits. That's where that goes. So this promotes corruption. It does not limit it. And with respect to the disclosure aspect, we make disclosures as well. It's not on the same cadence, you know, but Georgia can change that cadence if it wants. But that doesn't really have anything to do with the merits of this case. And how they enforce the leadership committee statute, not that that's what I'm challenging, how they enforce that statute is they deny Dave Perdue the committee. They deny Stacey Abrams the committee. That's how they enforce the statutes. They enforce it by keeping other people out, by limiting it to those two officials. And that is already, insofar as that's the way they enforce it, by already approving the Jones Leadership Committee, their work is done. That's correct. Why can't you issue an injunction requiring them to approve committees by other people to equalize the First Amendment playing field?  So, Your Honor, then I think that his argument that I'd be asking him to be right— No, I don't want you to make his arguments. No, but what I'm saying is that that's where his argument that you would be legislating from the bench by saying these people can have leadership committees, you know, could take more— That's no different than enjoining it in a regular context. You stop its operation. Your Honor, I think that the best remedy for the court is to strike the provisions, as applied to my client, that are impacting them here. We think that's the most limited thing to do by saying that in the context of this race— Let's ask it from this perspective. So if we took Judge Jordan's hypothetical, would you object if the injunction said— No. From now on, the Ethics Commission and the Attorney General have to treat this hybrid PAC the same as a leadership PAC and call it a leadership PAC. No, Your Honor. If he wants to file a paper saying it's now a leadership PAC, you have no objection. I have no objection to that. That would be fabulous. And as I cited, to your former predecessor, the Sessions case that we cited too, that indicates that the court can tailor a remedy as it finds appropriate. And if that's the appropriate remedy, please give it to us. I realize that this is not the stage of the election or the case that we're in right now, but couldn't it be that the appropriate remedy, if we find there's a First Amendment problem, is to—if we enjoined enforcement of the statute, then on the next round, when someone applied to— I'm sorry. Your Honor, you're enjoining the enforcement of which— Of the LC statute. Okay. If someone applied to have an LC and this court had said that the LC statute was unconstitutional, that would be the ordinary sort of injunction that federal courts issue, right? No, Your Honor. You're never going to make me agree with that. I come from a libertarian institution. I'm not making you do anything. I'm just curious. Your problem is that it would not redress your client's injury. It would not redress my client's injury. And I don't think under the First Amendment it's a remedy that the court can offer. I don't think that the court can restrict speech. I don't think you can do that. I think you can only lift restrictions on speech. That's it. I've not seen a case that says that. Well, okay, so I think that that's exactly— Doesn't effectively Davis say that? Yeah, that's exactly what Davis says. If the normally applicable limits on individual contributions and coordinated contributions are seriously distorting the electoral process, and if those limits are not needed in order to combat corruption, which we've established here, I'll stop you because I'm familiar with that quote, and I've seen it quoted, but I think it's taken out of the context. That is a very different case. The problem there was that the government was stopping a person from spending their own funds, which everyone knows there's no constitutional limit on that. I do not think you can take that quote out of context and say that that necessarily means that the remedy that's being proposed couldn't work in this very different context. Your Honor, I'm quite certain that the circuit justice would agree with me and my perspective on this. It's about liberty, and political speech should be allowed. It's protected the most, and so you allow that. It's not dangerous. Unlike the circuit justice, we have precedents that we have to follow in every case. Well, his opinion is starting to become precedential more and more. All right, thank you. Thank you, Mr. Miller. We understand your case. We're going to move to the next one.